IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Quintyrus Kirreze Moses Jones, | ) | C/A No. 0:13-2574-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC.  The plaintiff, Quintyrus Kirreze Moses Jones, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

PJG

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]   If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



## ADMINISTRATIVE PROCEEDINGS

In August 2010, Jones applied for DIB and SSI, alleging disability beginning August 2, 2010. Jones's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A video hearing was held on June 14, 2012, at which Jones, who was represented by J. Robert Surface, Esquire, appeared and testified. After hearing testimony from Jones's parents—Lesa M. Jones and Kirby Jones—as well as a vocational expert, the ALJ issued a decision on August 30, 2012 denying benefits and concluding that Jones was not disabled. (Tr. 10-28.)

Jones was born in 1992 and was eighteen years old at the time of his alleged disability onset date. (Tr. 162-72.) He has a high school education and no past relevant work experience. (Tr. 210.) Jones alleged disability due to schizoaffective disorder. (Tr. 238.)

In applying the five-step sequential process, the ALJ found that Jones had not engaged in substantial gainful activity since August 2, 2010—his alleged onset date. The ALJ also determined that Jones's schizoaffective disorder was a severe impairment. However, the ALJ found that Jones did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Jones retained the residual functional capacity to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple one-two step tasks requiring a low stress work environment, defined as a non-production work, meaning no work such as producing a product in a high speed manner such as being on an assembly line. He also cannot have contact with the public, but can have only occasional contact with co-workers.

(Tr. 14.)  The ALJ found that Jones had no past relevant work, but that there were jobs that existed in significant numbers in the national economy that Jones could perform.  Therefore, the ALJ found that Jones was not disabled from August 2, 2010 through the date of his decision.

Jones appealed the ALJ's decision to the Appeals Council, which denied his request for review on  August 19, 2013 making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-5.)  This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Id.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

PJG

## ISSUES

Jones raises the following issues for this judicial review:

I.      Did the Defendant commit reversible error in failing to find Mr. Jones has an
        impairment or combination of impairments that meets or medically equals the
        severity of 12.03 Schizophrenic, paranoid and other psychotic-disorders? []

II.     Did the Defendant commit reversible error by failing to give controlling
        weight to the treating physician's evidence and opinions? []

(Pl.'s Br., ECF No. 16.)

## DISCUSSION

As stated above, in Jones's second issue for this judicial review he argues that the ALJ erred

in evaluating the evidence and opinions from Dr. William D. Taylor, Jones's treating psychiatrist.

The majority of Jones's arguments supporting his position in his first issue—that the ALJ erred in

failing to find that Jones met Listing 12.03—rely on the opinions from Dr. Taylor.  Therefore, the

court addresses the second issue first.

**A.      Treating Psychiatrist**

Typically, the Social Security Administration accords greater weight to the opinion of

treating medical sources because treating physicians are best able to provide "a detailed, longitudinal

picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

However, "the rule does not require that the testimony be given controlling weight."  Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is

evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has

examined the applicant, (2) the treatment relationship between the physician and the applicant, (3)

the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and

(5) whether the physician is a specialist."  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)



(citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should

also be considered.  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  In the face of "persuasive contrary

evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.

Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's opinion is not

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

accorded significantly less weight.' "  Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that
>
> a finding that a treating source medical opinion is not well-supported by medically
> acceptable clinical and laboratory diagnostic techniques or is inconsistent with the
> other substantial evidence in the case record means only that the opinion is not
> entitled to "controlling weight," not that the opinion should be rejected.  Treating
> source medical opinions are still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.  In many cases, a treating
> source's medical opinion will be entitled to the greatest weight and should be
> adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5.  This Ruling also requires that an ALJ's decision "contain

specific reasons for the weight given to the treating source's medical opinion, supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons

for that weight."  Id., at *5.

The ALJ's decision discusses Jones's treatment records in detail, including the treatment

notes and opinions of Dr. Taylor.  (See Tr. 16-19.)  Further, the ALJ addresses each opinion

presented to him.  The ALJ summarized Dr. Taylor's opinions as follows:

> Dr. Taylor in Exhibit 23F indicates claimant can occasionally do the following:
> understand, remember, and carry out short, simple instructions; make adjustments on
> simple work-related decisions; interact appropriately with supervisors, co-workers
> and respond appropriately to changes in a routine work setting.  He reports claimant
> can never do the following:  understand, remember and carry out detailed
> instructions; interact appropriately with the public; and respond appropriately to work



pressures in a usual work setting.  He also issues the following opinions:  claimant would not be able to consistently attend work at least 18 days out of 20; he would need to take unscheduled work breaks due to interruptions f[ro]m psychiatrically based symptoms; is likely to decompensate under the stress of simple, routine work loads of 40 hours a week; and cannot manage benefits in his/her own best interest. I will also address his opinion in 17F and 20 F wherein he indicates claimant is unable to work.  Further, he indicates in Exhibits 24F and 25F that claimant is not capable of handling monthly benefits, and that he has very impaired concentration and attention and cannot attend to any task that would be required of him in a usual work environment.  Additionally, he indicates claimant is not capable of managing the usual stressors and expectations that would occur in a work environment.

(Tr. 25.)  In determining that Dr. Taylor's opinions were entitled to little weight, the ALJ found that the opinions (1) were inconsistent with Dr. Taylor's own treatment notes; (2) appeared to rely too heavily on Jones's mother's opinions in finding a diminution in Jones's mental condition; (3) were inconsistent with the records of Carolina Center for Behavioral Health; (4) were also inconsistent with the medical records of Powdersville Medical Park; and (5) failed to account for the impact that Jones's long history of cannabis abuse has had on his mental condition.  (Tr. 25-27.)

Jones appears to argue that the ALJ's decision is unsupported because the ALJ's finding that Dr. Taylor *appeared* to rely too heavily on opinions from Jones's mother is speculative and that if the ALJ believed that Jones's mother was improperly influencing Dr. Taylor's opinions then he should have required Dr. Taylor to attend the hearing to provide clarification.[2]  In evaluating Dr. Taylor's opinions, the ALJ found as follows concerning Jones's mother:  "As I earlier stated, while I think it is proper to consider the mother's opinions in any diagnoses, Dr. Taylor appeared to rely too heavily on her opinions in finding a diminution in claimant's mental condition."  (Tr. 26.) Earlier in the opinion the ALJ summarized Dr. Taylor's treatment notes in detail and, as part of this

---

[2] In further support of this argument, Jones points out that Jones's attorney requested that the ALJ issue a subpoena to Dr. Taylor for the hearing.  However, a review of this request reveals that the attorney argued that Dr. Taylor should be subpoenaed to clarify a recurring note in Jones's record regarding Jones's drug usage.  (Tr. 133-34.)



summary, the ALJ analyzed and compared reports and representations by Jones, his mother, and his

father to Dr. Taylor.  For example, the ALJ observed that Dr. Taylor's medical records indicate

progress until July 2011 when Jones's mother provided reports that differed from Jones's reports,

and at that time, Dr. Taylor concluded that Jones had not been forthcoming about his illness and

impairments and therefore his previous notes were inaccurate.  In considering these reports, the ALJ

concluded that Dr. Taylor's opinions appeared to be directly related to the representations of Jones's

mother and relied in large part upon those representations.  He further noted that Jones's medical

records up to that point showed steady progress in Jones's condition and found it improbable that

Dr. Taylor's examinations and counseling would not previously have detected a diminution in

Jones's mental condition had Jones's condition been digressing as alleged by the mother.  (Tr. 19.)

The ALJ also examined later treatment notes, discussing the differences between the reports by

Jones's mother and the reports by Jones and his father.  In summary the ALJ found in pertinent part

that

> [i]t certainly appears from the records of Dr. Taylor that the tenor of the descriptions
> of the claimant's condition varies depending on whether it is presented to Dr. Taylor
> by the claimant's mother or father.  The mother's descriptions of the claimant's
> mental condition appear far more ominous and troubling than the descriptions the
> claimant's father provided Dr. Taylor.  I have reviewed the entire record in this
> matter, and I have concluded that, while I am sure the mother of the claimant means
> well and is attempting to look out for the best interest of her son, her contentions are
> not supported by the record.  There is no evidence that claimant was ever hospitalized
> again for his mental problems after August 2010.  Moreover, it cannot be denied that
> Dr. Taylor's record showed steady improvement in claimant's condition until the
> claimant's mother began interjecting her beliefs of the claimant's condition.  I do not
> doubt the genuineness of the mother's contention.  However, her contentions do not
> convince me that claimant's mental condition is disabling. . . .

(Tr. 19-20.)

Contrary to Jones's position, the court does not find that the ALJ's determination that Dr.

Taylor's opinions appeared to be based on reports from Jones's mother to be speculative.  In fact,



the ALJ devotes a significant portion of the decision to analyzing Dr. Taylor's notes and opinions, including the reports from Jones's mother.  Similarly, the court finds unpersuasive Jones's argument that the ALJ should have sought clarification from Dr. Taylor before discounting his opinions, as Jones has offered no explanation or discussion of how further testimony from Dr. Taylor would impact the ALJ's evaluation of Dr. Taylor's opinions.  See, e.g., Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).  Moreover, this was one of several reasons offered by the ALJ to discount Dr. Taylor's opinions.  See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); 20 C.F.R. §§ 404.1527(c), 416.927(c) (listing the applicable factors for an ALJ to consider in weighing medical opinions).

Jones also generally argues that "[t]he ALJ failed to fully and properly consider the continuous and consistent reports of psychological impairments that necessarily limited [Jones's] activities and prevented him from being able to work" and that "the ALJ only considered selected portions of the medical record and did not consider the record as a whole which supports the awarding of disability." (Pl.'s Br. at 12, ECF No. 16 at 12.)  However, Jones provides no support for this conclusory argument.  Moreover, upon review of the record and the ALJ's decision, the court finds that Jones has failed to demonstrate that the ALJ did not consider the record as a whole or that his decision is otherwise unsupported.  See Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of

PJG

evidence but may be somewhat less than a preponderance" and stating that the court may not

"undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of

whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if

it is supported by substantial evidence). Therefore, remand is not warranted on this issue.

**B.      Listing 12.03**

At Step Three of the sequential analysis, the Commissioner must determine whether the

claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a

claimant to show that his impairment matches a listing, it must meet *all* of the specified medical

criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the

impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found

in the Listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d); see also Bowen v. Yuckert,

482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment

is disabling at Step Three); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (same). The

Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown

in the medical evidence, with the medical criteria for the listed impairment.

The ALJ specifically considered Jones's mental impairment and found that "[t]he severity

of [Jones's] mental impairment does not meet or medically equal the criteria of listing 12.03." (Tr.

13.) The required level of severity to satisfy Listing 12.03 is met when the criteria in paragraphs "A"

and "B" are satisfied or when the criteria in paragraph "C" are satisfied. 20 C.F.R. Pt. 404, Subpt.

PJG

P, App. 1, § 12.03.  In this case, the ALJ first found that Jones did not satisfy the paragraph "B"

criteria,[3] which require that Jones's mental impairments result in at least two of the following:

1.      Marked restriction of activities of daily living; or
2.      Marked difficulties in maintaining social functioning; or
3.      Marked difficulties in maintaining concentration, persistence, or pace; or
4.      Repeated episodes of decompensation, each of extended duration.

Id.  Specifically, the ALJ found that Jones had no restrictions in activities of daily living; moderate

difficulties in social functioning and in concentration, persistence, or pace; and one to two episodes

of decompensation, each of an extended duration.  (Tr. 13.)  The ALJ further found that Jones did

not satisfy the paragraph "C" criteria.

Jones argues that the ALJ erred in failing to find that he met Listing 12.03.  First, he argues

that the evidence shows that he had marked restriction of activities of daily living; marked

difficulties in maintaining social functioning; and marked difficulties in maintaining concentration,

persistence, or pace.  In support of his position, Jones argues that Dr. Taylor opined that Jones cannot

live alone; that records indicate that Jones needed his family's assistance with his daily activities of

life and the monitoring of his mental illness; and that Dr. Taylor found that Jones had very poor

attention and concentration as part of his illness and that Jones's lack of understanding as to his

cannabis use was evidence of "his impaired social maturity and deficits in impulse control."  (Pl.'s

Br. at 7, ECF No. 16 at 7) (citing Tr. 415, 418, 443, 446, 451, & 452).  However, as stated above,

the ALJ found that Dr. Taylor's opinions were entitled to little weight, and Jones has failed to

demonstrate that the ALJ's decision with regard to Dr. Taylor was unsupported.  Therefore, to the

extent that Jones's support for this allegation of error depend on the limitations opined by Dr. Taylor,

---

[3] It appears to be undisputed that Jones met the paragraph A criteria.



the court similarly finds that Jones cannot demonstrate this aspect of the ALJ's decision is unsupported by substantial evidence.

Jones also argues that, in evaluating the "B" criteria, the ALJ took statements included in a Function Report dated November 10, 2010 out of context. However, the court has reviewed this report and finds that on the whole the ALJ accurately summarized Jones's statements. The court observes that the Function Report appears to have been completed by Jones and that his mother included additional responses to some of the questions. Jones appears to primarily rely on the additional statements by his mother as supporting additional limitations. As indicated above, the ALJ in weighing the evidence found that Jones's mother's statements were not supported by the record.

Alternatively, Jones argues that he meets the requirements of Listing 12.03C(2)[4] because he has suffered the symptoms of schizophrenia since at least March 15, 2010 and lists his treatment since that time. Further, Jones again relies on opinions from Dr. Taylor, including statements that (1) "Mr. Jones is not capable of managing the usual stressors and expectations that would occur in a work environment" (Tr. 452); (2) "[Jones's] impairment is severe in my opinion due to the lack of any progress beyond the initial treatment phase and his inability to function as an adult without the supervision of his parents now" (id.); and (3) "Pt has very impaired concentration and would likely decompensate in any work setting based on history" (Tr. 443). As with Jones's previous

---

[4] To meet part two of the paragraph C criteria, a claimant must demonstrate "[m]edically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03C.



argument, in light of the ALJ's finding that Dr. Taylor's opinions were entitled to little weight and Jones's failure to demonstrate that decision was unsupported, Jones's reliance on Dr. Taylor's opinions to demonstrate the ALJ erred in failing to find he met Listing 12.03C is unavailing.

## RECOMMENDATION

For the foregoing reasons, the court finds that Jones has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

October 17, 2014                                    Paige J. Gossett
Columbia, South Carolina                            UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).